Karen E. Ford Esq.
SW Ocean Ave & Mission, Suite 208
P.O. Box 287
Carmel-by-the-Sea, California 93921-0287
831-250-6433
Fax 831-250-6844
karen@fordslaw.com
SBN 88358
Attorney for Plaintiffs RAJA KANNAN

# United States District Court
# Northern District of California

| | |
|---|---|
| RAJA KANNAN, | Case No: 17-CV-07305-EJD (VKD) |
| Plaintiff, | **REPLY ISO MOTION TO WITHDRAW AS COUNSEL** |
| vs. | |
| APPLE, INC., | |
| Defendants | |

Karen Ford, counsel for Plaintiff in this action seeks to withdraw as counsel based on multiple grounds including a failure to pay fees and costs as required under the fee agreement between Plaintiff and his attorney. In response Plaintiff raises multiple issues which will be addressed below in the order stated by Plaintiff.

Plaintiff initially filed this action on his own and represented himself pro se for nearly a year before counsel was brought into the case. Counsel prepared and filed a Second Amended Complaint and has handled the discovery phase of the case.

**A.  Plaintiff has failed to comply with the requirements of the fee agreement.**

Counsel Ford does not agree with the description by Plaintiff of the communications when the fee agreement was entered into. However, in the interests of preserving confidentiality

of communications the differences will not be discussed here in detail. However, the key fact that Plaintiff entered into a fee agreement providing for hourly fees and for Plaintiff to pay costs of the litigation are admitted by the Plaintiff. Also, Plaintiff does not dispute that he has failed to pay any fees and costs beginning in October and has not paid for work in the last part of October or in November or December. This has created a significant unpaid fee and cost amount in excess of $50,000 and represents an impossible situation for counsel.

Plaintiff argues that he found a lender willing to loan $125,000 towards the fees and costs of the case and that counsel should be denied the ability to withdraw for this reason. The $125,000 was to cover both the currently outstanding unpaid fees and costs and all future fees and costs through the jury trial and any appeal. The lender required that Ford (or any attorney for Plaintiff) enter into a modified contingency fee agreement providing for a reduced hourly fee and a contingency. Beyond this, the lender also required that Ford (or any attorney for Plaintiff) commit to handling the case to conclusion, including through trial and appeal, waving any right to withdraw even if not paid the fees and costs required under the modified contingent agreement. Ford was not willing to enter into such an arrangement. Plaintiff apparently feels this is improper on her part. However, it is a legitimate business decision based on the needs of her very small practice. She cannot work for months on a case with no ongoing payment or bear, singlehandedly, the costs of a trial.

**B. Plaintiff's unconscionability argument is not supported in fact and is not relevant to this motion**

Plaintiff oddly argues that the hourly fee agreement is "unconscionable". The provisions of the fee agreement and the reasonableness of the fees incurred are not before the Court on this motion. Moreover, the fee agreement, to which Plaintiff willingly agreed, is a straightforward hourly fee agreement. He does not explain any way in which he was misled or misunderstood the

hourly fees or costs. The fee agreement was clear and he had plenty of chance to review it and to consult with independent counsel if he wanted. The hourly rate charged is $280 per hour which is very reasonable particularly given Ford's 40 years of specialized practice in employment law litigation and her experience as a partner and regional office head with two different major national employment law firms. The total hours spent and the considerable costs for court reporters and the like were proper and justified under the circumstances of this case.

Ford sent highly detailed invoices monthly or more often showing all tasks performed, time spent, and costs incurred. Kannan has never questioned the legitimacy of any of the invoices or the time or costs listed in them.

The decisions cited by Plaintiff have no application here. In *Severson & Werson v. Bolinger* (1991) 235 Cal.App.3d 1569 was not a withdrawal of counsel but a case in which a law firm sued for and was awarded unpaid fees. The Court denied only a specific portion of the fees based on lack of notice to the client. The law firm and the client entered into a fee agreement for work by specific attorneys at a given rate. Then the client was billed for work at different higher rates with no prior notice to the client. The Court disallowed the portion of the fees exceeding those set out in the agreement. *Bird, Marella, Boxer & Wolpert v. Superior Court* (2003) 106 Cal.App.4th 419 involved a lawsuit by a criminal defendant seeking to recover fees he claimed were improper as they represented work that was never done and other aspects of fraud. The case has nothing to do with withdrawal of counsel. The court held only that the criminal defendant could make such a claim even though he was guilty of the crime charged. It had nothing to do with the issues presented in this motion.

There is not even a hint of unconscionable conduct by Plaintiff's counsel in this matter. There is simply a case that turned out to be more expensive and time consuming than Plaintiff

anticipated when he filed it. Moreover, such an accusation is not relevant to this motion in any event. Indeed, if Plaintiff feels his attorney has acted improperly and unconscionably then that clearly reflects the kind of breakdown in the relationship which mandates withdrawal.

C. **Plaintiff is correct that the fees and costs were due at least in part to Apple's conduct in resisting discovery**.

Plaintiff argues correctly that the fees and costs were increased in this case due to Apple's resistance to discovery. However, it is also true that his current counsel performed extensive services on his behalf.

The fundamental claim in the action is that Kannan was treated in a discriminatory fashion with respect to compensation, placement in the job level structure and promotions than other employees in the same department with the same job title and reporting to the same supervisor. This discrimination occurred over a period of years which also expanded discovery and the attorney work needed to prepare. Initially, while *pro se*, Kannan filed two complaints both of which were dismissed pursuant to motions by Apple. In the fall of 2018 Ms. Ford was brought into the case. She prepared and filed a Second Amended Complaint. She also participated in the initial CMC and related statement to the Court. There was also a mediation in May 2019 in which she represented the Plaintiff. She also located and arranged for an economic expert. All of these services required time and costs.

There are a total of seven key comparator employees in addition to Kannan himself. For that reason Plaintiff's case required discovery concerning the other comparator employees and their compensation, evaluations, placement in job levels, and promotions. Thus, the discovery was broader than just the circumstances of Plaintiff's employment or a single decision as to him alone. Discovery also extended over a number of decisions concerning multiple employees over several years and an internal investigation done by Apple in response to Kannan's complaints of discrimination.

Apple resisted initial disclosures, production of documents and setting depositions. Plaintiff's counsel had to file multiple motions to obtain discovery, (See e.g. Dkt 84, 90, 90-1, 108, 108-1, 139, 140, 141, 145, 146, 157, 157-1, 165, 165-1, 166.)

Plaintiff conducted nine days of depositions of Apple witnesses. In part the number of depositions was necessary because Apple witnesses often denied knowledge or recollection of events. Many of the depositions were conducted pursuant to Rule 30(b)(6) as a result. These depositions resulted in court reporter fees as well as counsel's attorney fees and costs of a conference room to hold the depositions. Those costs are part of the expenditures of which Kannan complains. Apple took a full day of deposition on Kannan in May 2019. Then, at the very end of discovery it sought further deposition of Kannan and sought to force him to travel to California from India for the second time. He objected and Apple brought a motion to which counsel had to respond. Dkt 153. Ultimately, Apple was allowed only an additional half day of deposition by video connection and this occurred after the close of discovery. In fact, Apple brought multiple discovery motions of its own to which counsel had to respond. See e.g. Dkt 110, 112, 114, 152, 151. All of this required considerable effort by Plaintiff's counsel.

Apple served 11 third party subpoenas on the medical care providers to Kannan's son which led to Plaintiff having to make objections and file a motion to protect the child's medical privacy. Apple failed to timely provide notice of the subpoenas to Kannan and his counsel and so many of the medical care providers were not aware of the objections and did not properly tailored their response. Thus, the responses had to be held by a copy company and returned to the third parties when they provided appropriately limited responses. Resolving these problems was time consuming. Apple also served 13 third party subpoenas on companies to which it contended Kannan might have submitted job applications. Response to all these subpoenas, bringing motions on the subject to the court, and managing the results required a great deal of attorney time for Kannan's counsel.

Plaintiff served four sets of requests for production of documents and one set of interrogatories. Apple served two sets of requests for production and one set of interrogatories to which Plaintiff had to respond. Apple raised a large fuss over the privilege log and filed more

than one motion on this issue requiring Plaintiff to produce multiple privilege logs and produce documents for in camera inspection. See e.g. Dkt 152. No documents designated as privileged were ultimately determined to be improperly withheld. All of this required considerable attorney time on Ford's part.

Plaintiff was faced with such challenges in obtaining discovery that he had to seek two extensions of the fact discovery deadline and two depositions and additional production of documents took place in November and December after fact discovery had closed. All of this also increased the amount of attorney time and fees.

Each step of the discovery process and each deposition and motion was fully discussed with Plaintiff and he made or approved the ultimate decisions as to what actions to take. He was well informed of how much time would be involved and what the additional costs such as for court reporters would be. Counsel will provide no details in the interests of preserving confidentiality.

There is no doubt that Apple's aggressive discovery stances and its resistance to discovery significantly increased the costs of the discovery phase of the case. It is also true that the case itself is relatively complex and the events at issue ran over several years. This required more discovery than another employment case might involve. In any event, the costs and fees incurred to date are not unreasonable at all in light of how much work was involved.

**D. The Court needs to resolve the AEO issue in connection with the transfer of the case.**

One of the key issues to be addressed in the near future and that the Court will have to resolve is what is to become of the documents marked as Attorneys Eyes Only by Apple. The 5,000 pages of AEO documents include the critical evidence of the compensation and employment actions as to the comparator employees. Counsel for Plaintiff has been careful not to disclose these documents or their content to the Plaintiff. When he obtains replacement counsel Ford will need to send that material to the new attorney. If Kannan becomes once again

*pro se* then the issue of what to do with the AEO documents will have to be resolved.    Ford will need direction as to how to proceed with this critical matter.

      For the forgoing reasons, and given all the circumstances, counsel for Plaintiff, Karen Ford, asks for an Order permitting her to withdraw as counsel.

Respectfully submitted,

      Dated this 27th  day of December 2019.

_____
Karen E. Ford Esq.
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I am over the age of 18 and am not a party to the above-captioned matter.

On December 27, 2019 I served the documents listed below on the Defendant by automatic electronic transmission via the Court's Case Management and Electronic Case Filing practice as follows:

    TODD K. BOYER, Bar No. 203132
    todd.boyer@bakermckenzie.com

    CAROLINE A. PHAM, Bar No. 305080
    caroline.pham@bakermckenzie.com

    Baker McKenzie LLP
    660 Hansen Way
    Palo Alto, CA 94304

On December 27, 2019 I served the documents listed below on Plaintiff Kannan by automatic electronic transmission through the court's ECF system where he is still a registered party receiving all filings and via separate e mail as follows:

    Raja Kannan
    rajakannan@gmail.com

The documents served on December 27, 2019 are:

**REPLY ISO MOTION TO WITHDRAW AS COUNSEL**

Dated this 27th day of December 2019.

_/s/ KE Ford_____

Karen E. Ford Esq
Attorney for Plaintiff
