UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAJA KANNAN,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | Case No. 5:17-cv-07305-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>**\*\*FILED UNDER SEAL\*\***<br><br>Re: Dkt. Nos. 293, 304 |

Plaintiff Raja Kannan ("Kannan") worked as an Engineer for Defendant Apple Inc. ("Apple") at Apple's Cupertino, California office from August 2011 until he transferred to a related Apple company, Apple India Pvt Ltd, in 2018. Kannan asserts he was routinely and systematically discriminated against when it came to his requests for promotion and compensation. The Second Amended Complaint ("SAC") alleges causes of action for (1) discrimination based on perceived disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; (2) discrimination based on relationship to a person with a disability in violation of the ADA; (3) retaliation in violation of the ADA; (4) discrimination based on perceived disability in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 et seq.; (5) discrimination based on association with a disabled person in violation of FEHA; (6) retaliation in violation of FEHA; (7) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.; (8) interference with rights in violation of the FMLA; (9) retaliation in violation of the FMLA; (10) violation of the California

Case No.: 5:17-cv-07305-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
1

Family Rights Act ("CFRA"), Cal. Gov.t Code § 12945.2; (11) interference with rights in violation of the CFRA; (12) retaliation in violation of the CFRA; and (13) wrongful discharge. Dkt. No. 58. Apple has moved for summary judgement on all thirteen causes of action.

For the reasons discussed below, the Court **GRANTS** Apple's Motion for Summary Judgment.

**I.   BACKGROUND**

Kannan was hired by Apple in August 2011 as a full time ICT4 SCM Build and Release Engineer in the Apple Online Store Group of the Information Systems and Technology Department ("IS&T") Department. Declaration of Todd K. Boyer, Exhibit A ("Kannan Depo."), at 43:5-19. In the fall of 2013, Kannan internally interviewed for a Technical Project Manager position in the Application Production Support ("APS") group managed by Joseph Kotni ("Kotni") within the IS&T Department. Declaration of Joseph Kotni ("Kotni Decl.") at ¶ 3. As part of the interview, Kannan and Kotni discussed the responsibilities and expectations of the role. Kannan Depo. at 75:10-13; 76:19-25. Kannan disclosed during the interview he had an autistic son and that he would need flexible working hours to provide care or attend appointments for his son. *Id.* at 76:21-78:20. Kotni told Kannan he would not have any set working hours and was permitted to work a flexible schedule so long as his work was handled on time. *Id.* at 94:7-95:11. He was offered the position and began work as an IT Technical Project Manager at job level 4 on November 4, 2013. Kotni Decl. at ¶ 3. From November 2013 to April 2014, Kannan's need to take time off was often limited to once a week to attend his son's medical or school appointments and usually occurred during his lunch period. *Id.* at 36:23-37:9, 91:25-93:21. During the time in which Kannan reported to Kotni, Kannan sent two notices to Kotni where he referenced taking time off specifically to attend a doctor's appointment for his son. *Id.* at 145:21-146:5. For these occasional appointments, Kannan would take time off before or after coming to the office or work from home. *Id.* at 92:25-93:21.

In Apple's IS&T department, employees are assigned a job level based on their position,

Case No.: 5:17-cv-07305-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

2

experience, responsibilities, and performance. *Id.* at ¶ 5.  Individual Contributors ("ICs") are team members in a non-manager role that work under the direction of a team leader or manager *Id.*  IC4 level designation is generally the second-highest level of IC and considered an advanced professional role with IC5 generally being the most senior IC role. *Id* at ¶ 6. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Declaration of Rahul Rastogi ("Rastogi Decl.") at ¶ 29.

In terms of compensation, Apple ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at ¶ 11. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Kannan was never given a guarantee that he would receive any RSUs during his time on Kotni's team. Kannan Depo. at 56:18-21, 62:6-63:2.

Kannan worked as a member of Kotni's team from November 2013 through April 2017. *Id.* at ¶ 3. Kannan testified that during this time, he asked Kotni for a promotion to an IC5 level designation in 2014, 2015, and 2016. Kannan Depo. 188:17-20. Kotni recommended Kannan for promotion from IC4 to IC5, but his recommendation was denied by higher management. Rastogi Decl. at ¶ 29. Kannan was never promoted while he was a member of Kotni's team. SAC at ¶ 68.

1  Kannan also never received any RSUs after his yearly performance review.  *Id*.  However, Kannan
2  states that after he was hired, Kotni brought on at least three external people for his team as IC5
3  Technical Project Managers between 2015 and 2017.  *Id*. at ¶ 65.  Kannan also alleges that Kotni
4  purposefully gave him lower ratings in his internal reviews so that he would not receive as many
5  RSUs as his peers.  *Id*. at ¶ 67.  Kannan asserts that, cumulatively, these decisions resulted in a
6  reduction in compensation over what he otherwise would have been entitled to.  *Id.* at ¶ 68.
7        In September 2015, Kannan met with Kotni for his yearly performance review and to
8  discuss review comments and ratings Kannan received related to his work for the previous year.
9  Kannan Depo. at 180:22-182:17.  While discussing a comment made by a third party about
10 Kannan's networking skills, Kotni allegedly said he could see why someone would comment like
11 that; because it might be due to genetics similar to Kannan's autistic son.  SAC at ¶ 55.  Kotni
12 added that he did not think Kannan "could ever improve that".  Kannan Depo. at 169:8-24.
13 Following his review with Kotni, Kannan contacted the Human Resources Department at Apple to
14 discuss his performance career plan.  *Id.* at 180:22-182:17.  Kannan told the representative from
15 Human Resources that he did not feel comfortable about the review comments or the ratings that
16 he received from Kotni.  *Id*.  Afterwards, Kannan submitted a written complaint in December
17 2015 where he accused his managers of discriminating against him when it came to promotions,
18 pay increases, and bonuses because of his relationship or association with his son's autism
19 disability.  Declaration of Brian Carr ("Carr Decl."), Exh. I.  Apple investigated his allegations but
20 was unable to substantiate his claims.  Carr Decl. at ¶ 11.  On April 5, 2016, Kannan filed an
21 administrative complaint of discrimination with the California Department of Fair Employment
22 and Housing ("DFEH").  SAC, Exh. A.  The DFEH complaint again focused on Kannan's
23 perceived discrimination by Kotni and higher management when it came to promotions and
24 bonuses due to his association with his disabled son.  *Id*., Exh. A.  The DFEH marked his
25 complaint as received and dual-filed it with the Equal Employment Opportunity Commission

("EEOC") on May 10, 2016. *See* RJN Exh. A, B.[1] On December 27, 2016, the DFEH sent Kannan a right to sue letter. Declaration of Raja Kannan ("Kannan Decl.") at ¶ 32. Kannan also received a right to sue letter from the EEOC on February 28, 2018. *Id*. In April 2018, Kannan resigned his position with Apple to take employment with a different Apple company, Apple India Pvt. Ltd. Carr Decl. at ¶ 12.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Upon such a showing, the court may grant summary judgment on all or part of the claim. *See id*.

To prevail on a summary judgment motion, the moving party must show that there are no triable issues of material fact as to matters upon which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party needs to show only that there is an absence of evidence to support the non-moving party's case. *Id.*

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. *Id.* at 324. Nor may the non-moving party merely attack or discredit the moving party's evidence. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 324.

---

[1] Apple's Request for Judicial Notice in Support of Defendant Apple Inc.'s Motion for Summary Judgement, Dkt. No. 293-15, asks the Court to take notice of the DFEH charge dated May 10, 2016, the EEOC charge dated November 2, 2016, and DFEH email correspondence with Kannan. Because Kannan necessarily relies on the two charges and email correspondence and the authenticity of them is not in dispute, the Court will consider the two charges and email correspondence under the "incorporation by reference" doctrine. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).

Case No.: 5:17-cv-07305-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

5

## III. DISPUTED FACTS AND EVIDENTIARY ISSUES

Kannan "dispute[s]" many of the facts on which Apple's Motion relies. Dkt. No. 304-3. Kannan largely fails, however, to cite to evidence that actually controverts any of Apple's proffered facts. He instead makes conclusory statements or circular citations back to still-other documents that do not suggest a disputed fact.

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment," and therefore when it appears that Kannan has not cited to any specific evidence controverting a fact on which Apple relies, the Court will deem that fact undisputed for purposes of this Motion. *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988).

## IV. DISCUSSION

Apple raises five separate arguments in support of its Motion for Summary Judgment: (1) Kannan cannot establish a prima facie case of disability discrimination under the ADA and FEHA; (2) Kannan cannot prove Apple violated or interfered with his rights under the FMLA and CFRA; (3) Kannan failed to exhaust all administrative remedies required to proceed on his retaliation claims; (4) Kannan cannot establish a prima facie case of retaliation; and (5) Kannan cannot state a claim for wrongful termination. The Court addresses each in turn.

### A. Claims 1-2, 4-5: Disability or Associational Disability Discrimination under the ADA and FEHA

Kannan's first and fourth claims allege he was discriminated against because Apple perceived or regarded him as disabled. SAC at ¶¶ 74-84, 85-98. Additionally, Kannan's second and fifth claims allege he was discriminated against because of his son's disability. *Id.* at ¶¶ 111-121, 122-134.

In evaluating such claims, California has adopted the three-stage burden shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see also Guz v. Betchel Nat. Inc.*, 24 Cal. 4th 317, 354–56 (2000). Once the plaintiff has made a prima facie showing of employment discrimination, "the burden then shifts to the employer to offer a legitimate,

Case No.: 5:17-cv-07305-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

6

nondiscriminatory reason for the adverse employment action." *Deschene v. Pinole Point Steel Co.*, 76 Cal. App. 4th 33, 44 (1999). If the employer offers such a reason, "plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." *Id*. Finally, "the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Santillan v. USA Waste of California, Inc.*, 853 F.3d 1035, 1042 (9th Cir. 2017) (quoting *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)).

### i. *Prima Facie* Case

To state a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that "(1) she is disabled within the meaning of the ADA; (2) she is a qualified individual able to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability." *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (alterations omitted). "A prima facie case of disability discrimination under FEHA requires a showing that (1) the plaintiff suffered from a disability, (2) the plaintiff was otherwise qualified to do his or her job, with or without reasonable accommodation, and (3) the plaintiff was subjected to adverse employment action because of the disability." *Castro-Ramirez v. Dependable Highway Express, Inc.*, 2 Cal. App. 1028, 1037 (2016). Further, "[a]dapting this framework to the associational discrimination context, the 'disability' from which the plaintiff suffers is his or her association with a disabled person." *Id*. This "disability" must have been "a substantial factor motivating the employer's adverse employment action." *Id*. Because the FEHA provisions relating to disability discrimination are based on the ADA, the state and federal disability claims may be analyzed together in the absence of contrary or different law on a particular issue. *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1133 n.6 (9th Cir. 2001).

The parties dispute first whether Kannan was "qualified" for a promotion to the IC5 level. Next, they dispute whether Apple's decisions related to Kannan's potential promotion, employee ratings, and compensation were an "adverse employment action" motivated by Kannan's perceived or associational disability. In light of the evidence submitted, Kannan has not raised a genuine issue of material fact that he has a prima facie case of disability discrimination under the ADA and FEHA.

### ii. Whether Kannan was Qualified

Under the ADA and FEHA, a qualified individual is one with a disability who, with or without reasonable accommodation, can perform the essential functions of the job the individual holds. *Samper*, 675 at 1237; *Jackson v. Simon Prop. Grp., Inc.*, 795 F. Supp. 2d 949, 959 (N.D. Cal. 2011); *see also* 42 U.S.C. § 12111(8); Cal. Gov't Code 12940(a)(1). "Essential functions" are "fundamental job duties of the employment position . . . not including the marginal functions of the position." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 990 (9th Cir. 2007) (en banc) (internal quotation marks omitted). Courts consider, among other things, the employer's judgment as to what functions are essential, the amount of time spent performing the function, the consequences of not requiring the applicant or employee to perform the function, and the work experience of current and former employees. *Id.* at 991.

Here, promotion to the IC5 level required that an employee "demonstrate a combination of technical expertise with cross-functional leadership impact, be visible within the division and an influence beyond their own project to others, and be skilled in communication and problem solving." Kotni Decl. at ¶ 8. The Court finds that because Kotni recommended Kannan be promoted to the IC5 level while he served as his manager, Kannan has established a triable issue of fact as to whether he was qualified for the IC5 position.

However, Apple has put forth legitimate, non-discriminatory reasons for why Kannan was not promoted to the IC5 level. Even though Kotni recommended that Kannan be promoted, Rahul Rastogi, the individual in higher management to whom Kotni reported to, made the decision to

deny the promotion request. Rastogi Decl. at ¶ 29. Kannan did not have the same level of responsibility as the other IC5s on the APS team and Rastogi believed Kannan needed additional professional development before he would be ready. *Id.* at ¶ 39. Kannan argues that Apple's argument that he was not qualified for the promotion should be rejected because a group of managers on the APS team (the "Alleged Comparators") were "similarly situated as to job duties and responsibilities and had similar or lesser qualifications, skills, and experience" as he did, yet were classified as IC5s. SAC at ¶ 43. None of these individuals, however, had similar circumstances as Kannan. Indeed, the Alleged Comparators on the APS team had more responsibility than Kannan when it came to the number of contractors each team member was supervising which was a distinct feature and responsibility for IC5 level managers. *See* Kotni Decl. at ¶¶ 20-23, Exh. N. Further, the individuals who were hired as IC5s after Kannan joined Kotni's team already had more extensive management experience than Kannan. Kotni Decl. at ¶¶ 24-25; Rastogi Decl. at ¶ 31. The undisputed evidence establishes that Kannan neither had the team management experience nor the same supervisorial responsibility as the Alleged Comparators. Accordingly, there were legitimate, non-discriminatory reasons for why Kannan was denied a promotion.

### iii.  Adverse Employment Action Because of Disability

Next, Kannan contends that he suffered an adverse employment action when Apple failed to promote him to the IC5 level. SAC at ¶ 47. Additionally, Kannan alleges he was not awarded proper RSU stock compensation. *Id.* at ¶ 41. The Ninth Circuit "take[s] an expansive view of the type of actions that can be considered adverse employment actions" such that "a wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray v. Henderson*, 217 F.3d 1234, 1240, 1241 (9th Cir. 2000). Denials of promotion, as well as compensation and other "privileges of employment" qualify as adverse employment actions under the ADA and FEHA. *See* 42 U.S.C. § 12112(a); Cal. Gov't Code 12940(a). Thus, Kannan's denied promotion and the lack of RSUs issued to him could be seen as adverse employment

actions.

However, the Court must determine whether there is a causal nexus between the adverse employment actions and Kannan's disability or associational disability. The "ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation—a motivating factor standard." *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005). "[T]he ADA does not require that a discriminatory impetus have been the only motive for an adverse employment action." *Dark v. Curry Cty.*, 451 F.3d 1078, 1084–85 (9th Cir. 2006). But, it must "be a motivating factor . . . the forbidden criterion must be a significant reason for the employer's action. It must make such a difference in the outcome of events that it can fairly be characterized as the catalyst which prompted the employer to take the adverse employment action, and a factor without which the employer would not have acted." *Kilgore v. Tulare Cty.*, No. CV F 10–0031 LJO BAM, 2012 WL 483085 at *8 (E.D. Cal. Feb. 14, 2012).

Here, the record is devoid of factual evidence that Kannan's perceived disability or his son's disability motivated Apple to deny his promotion or not issue him RSU stock bonuses. As support for his argument, Kannan places emphasis on a chart produced by Apple which he claims shows comparable employees managed by Kotni receiving RSU stock bonuses. *See generally* Carr Decl., Exh. N. Kannan argues that despite him having more experience and better reviews, the chart highlights that Kannan was the only employee in Kotni's teams who did not receive RSUs. Opp. at 25; *see also* Carr Decl., Exh. N. However, as discussed above, review of the chart shows that the Alleged Comparators and other employees were all working at a higher job level and with more responsibility as to the number of contractors at Apple they were managing. Furthermore, Kotni awarded Kannan merit-based salary increases every year that he reported to him and awarded him the highest performance bonuses in 2015 and 2016 that he had ever received up to that point. Carr Decl. at ¶ 7, Exh. F. In 2014 and 2015, Kotni also recommended Kannan for promotion and for RSU stock bonuses. Rastogi Decl. at ¶¶ 7, 23, 24, 29.

It is undisputed, however, that higher management made the final determination on an employee's promotion or compensation award. *Id*. Kannan fails to present any disputed fact that suggests Rastogi or anyone else in higher management had knowledge of his son's disability or perceived him as disabled. *See* Kannan Depo. at 186:2-187:1; Rastogi Decl. at ¶ 9. Kannan instead argues that upper management would simply "rubber-stamp" Kotni's animus. Opp. at 2. Kannan claims Kotni would "calibrate down" his performance ratings to create a "composite score" that would ensure upper management would not award Kannan RSUs regardless of Kotni's recommendations. *Id.* at 6-8. Yet, Kannan does not put forth any factual evidence suggesting this is what Kotni would do when evaluating Kannan or any other employee, or that this "composite score" was upper management's sole determining factor when deciding whether RSUs were awarded. Accordingly, Kannan has failed to establish that there are triable issues of fact as to whether he suffered an adverse employment action because of his disability or associational disability.

Because Kannan has failed to establish a prima facie case, the Court concludes that the undisputed evidence taken as a whole is insufficient to permit a rational inference that Apple's actual motive was discriminatory. *See Guz*, 24 Cal. 4th at 361 ("[T]he great weight of federal and California authority holds that an employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory."). Therefore, the Court **GRANTS** summary judgment as to Kannan's disability and associational disability discrimination claims.

**B.     Claims 7-8, 10-11: Violation of and Interference with the FMLA and CFRA**

Kannan also brings claims under the FMLA and CRFA, alleging he was never notified that his scheduling requests might be eligible for coverage and that he was never given the opportunity to take leave. Because the FMLA and CFRA are substantively identical, the Court discusses only the FMLA claim. *See Marchisheck v. San Mateo Cty.*, 199 F3d 1068, 1074 n.2 (9th Cir. 1999).

Case No.: 5:17-cv-07305-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

11

To bring a claim for interference with the FMLA, a plaintiff must establish that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Escriba v. Foster Poultry Farms*, 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) ). "Employees must notify their employers in advance when they plan to take foreseeable leave for reasons covered by the Act, . . . and as soon as practicable when absences are not foreseeable." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001). "[T]he employer is responsible, having been notified of the reason for an employee's absence, for being aware that the absence may qualify for FMLA protection." *Id.* at 1131.

Kannan's claims fail because Kannan does not present any evidence that Apple denied Kannan any FMLA or CFRA benefits. Kannan's flexible schedule requests were granted, and there is no evidence that he was ever prohibited from attending any appointment or that Apple denied him of any benefit. His claims fail as a matter of law. *Stefanini v. Hewlett Packard Enter. Co.*, No. 18-CV-07051-NC, 2020 WL 363349, at *5 (N.D. Cal. Jan. 22, 2020) (granting summary judgement where plaintiff was not denied any FMLA benefits and thus could not make a prima facie case for interference with FMLA rights).

Accordingly, the Court **GRANTS** summary judgment as to Kannan's FMLA and CFRA claims.

**C.     Failure to Exhaust Administrative Remedies as to Retaliation Claims 3, 6, 10-12**

Next, Apple argues that it is entitled to summary judgement on Kannan's retaliation based claims and for violation of the CFRA because Kannan failed to exhaust his administrative remedies.

Title I of the ADA, FEHA, and CFRA require exhaustion of administrative remedies as a prerequisite to judicial relief. *See Zimmerman v. Oregon Dept. of Justice*, 170 F.3d 1169, 1172 (9th Cir. 1999) ("Title I requires an employee first to file a charge with the EEOC in a timely

Case No.: 5:17-cv-07305-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
12

manner."); *Robinson v. Dep't of Fair Employment & Housing*, 192 Cal. App. 3d 1414, 1416 (Ct. App. 1987); *Bere v. MGA Healthcare Staffing Inc.*, No. C 16-01346 WHA, 2016 WL 3078871, at *2 (N.D. Cal. June 1, 2016) ("Because CFRA is a part of FEHA, a plaintiff must also exhaust administrative remedies before bringing a civil action for violation of CFRA). Further, the EEOC and DFEH are each the agent of the other for purposes of receiving charges; and the filing of a charge with one is deemed to be a filing with both. *See Paige v. State of California*, 102 F.3d 1035, 1041 (9th Cir. 1996).

A judicial complaint may encompass any discrimination like or reasonably related to the allegations of the EEOC charge. *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973)). A district court's jurisdiction extends to all allegations of discrimination that fall within the scope of either the EEOC's actual investigation or an EEOC investigation that can reasonably be expected to grow out of the charge of discrimination. *Freeman*, 291 F.3d at 636. A district court must inquire whether the original EEOC investigation would have encompassed the additional charges made in the court complaint but not included in the EEOC charge itself. *Id*. The language of EEOC charges must be liberally construed because the charges are often made by lay people who are not expert in the technicalities of formal pleading; the crucial element of the charge is the factual statement. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002). Allegations of discrimination not included in the administrative charge may not be considered by a district court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge. *Id*. Factors appropriately considered are the alleged basis of the discrimination, dates of the discriminatory acts specified in the charge, perpetrators of discrimination named in the charge, locations at which discrimination is alleged to have occurred, and the extent to which the judicial claims are consistent with the plaintiff's original theory of the case. *Id*.

It is undisputed that Kannan filed his DFEH complaint on April 5, 2016 and received a right to sue letter on December 27, 2016. The DFEH complaint stated the following:

Case No.: 5:17-cv-07305-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT
13

> I strongly believe I have been discriminated by my managers when it comes to promotions, pay hike, and bonuses, because of my relationship/association with my son who has a disability[.]
>
> I informed my manager Joseph Kotni, around September 2013 that my son has a disability[.]
>
> I explained to him that I may need some flexible working hours to [take] care of my son's needs at times. Additionally, I told him that I would make sure it never impacted my work nor my performance while caring for my son.

RJN, Exh. A. Kannan's DFEH complaint was thus limited to discrimination and made no mention of retaliation as opposed to the SAC. *See* SAC at ¶¶ 99-110, 135-145, 175-209.

However, a reasonable investigation of the discrimination claims would have encompassed other acts of arguably retaliatory conduct during the same period. The allegations of retaliatory conduct in the SAC either fell within the scope of the DFEH's actual investigation or a DFEH investigation that could reasonably be expected to grow out of the charge of discrimination. Similarly, the new matters in the SAC concern claims like or reasonably related to the EEOC complaint that would necessarily be uncovered in the course of a EEOC investigation. *See Garcia v. Los Banos Unified Sch. Dist.*, 418 F. Supp. 2d 1194, 1215 (E.D. Cal. 2006) (noting that result under FEHA would be the same as that under Title VII when evaluating whether plaintiff had exhausted all administrative remedies). Thus, the Court concludes that Kannan exhausted his administrative remedies as to his retaliation and CRFA claims.

### D. Claims 3, 6, 9, 12: Retaliation under ADA, FEHA, FMLA, and CFRA

Kannan alleges that Apple retaliated against him in violation of the ADA, FEHA, FMLA, and CFRA, for exercising a variety of rights by: (1) denying increases in compensation including salary and bonuses; (2) failing and refusing to move him to the IC5 job level in the compensation system; (3) failing to award RSUs as awarded to others in accordance with Apple's policies and procedures; (4) reducing his overall compensation over the years of his employment; (5) failing to take into account in 2014 the prior years of employment and performance in the prior position; (6) the manipulation and disparate application of the performance review ratings and process; and (7) forcing him to transfer to another Apple company in India at much less compensation and

1    benefits.  SAC at ¶¶ 99-110, 135-145, 165-174, 198-209.

2           To establish a prima facie case of retaliation under the ADA or FEHA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two.  *Brown v. City of Tucson*, 336 F.3d 1181, 1186–87 (9th Cir. 2003).  If an employee can establish a prima facie case, the employer can then offer legitimate reasons for the adverse employment actions, at which point, the burden shifts back to the employee to demonstrate a triable issue of fact that such reasons are pretextual.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  Mere temporal proximity between protected conduct and the adverse action is inadequate to create a triable issue where the employer produces evidence of a legitimate, non-discriminatory reason for the actions.  *Nadaf–Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 990 (2008).

       The FMLA and CFRA also require the plaintiff to make a prima facie case of retaliation.  *Nelson v. United Techs.*, 74 Cal. App. 4th 597, 613 n.5 (1999).  To prevail on a claim under the FMLA and CFRA, a plaintiff must plead and prove: (1) that the plaintiff was eligible for CFRA leave; (2) that the plaintiff took CFRA leave; (3) that the plaintiff suffered an adverse employment action because he exercised his right to take CFRA leave; and (4) that there was a causal connection between the adverse employment action and the plaintiff's exercising of his CFRA rights.  *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 261 (2001).

       Here, Kannan asserts he engaged in various acts of protected activity, including, (1) requesting a flexible schedule to care for his son; (2) protesting acts of discrimination including review ratings, denial of the move to job level IC5, denial of stock awards; (3) submitting an internal complaint to Apple; and (4) filing a complaint with the DFEH and EEOC.  However, as discussed above, the undisputed facts show that Apple had legitimate non-retaliatory reasons for denying Kannan's promotion request and for not issuing him certain RSU bonuses.  Kannan did not have the team management experience nor the same supervisorial responsibility as the Alleged Comparators on his team who were IC5s and who received RSU stock bonuses.  Further, higher

1  management had the final decision on whether to promote Kannan and whether he would be

2  issued RSU stock bonuses.  And, it is undisputed that individuals in higher management did not

3  have any knowledge about Kannan's perceived disability or associational disability.  As such,

4  even if Kannan could establish a causal link between his activity and the adverse employment

5  action, he cannot defeat Apple's showing that it had legitimate non-retaliatory reasons for these

6  actions.  *See Rincon v. Am. Fed'n of State, Cty. and Mun. Employees*, No. 12-4158 MEJ, 2013 WL

7  4389460, at *15 (N.D. Cal. Aug. 13, 2013) (denying retaliation claim where defendant established

8  it had non-retaliatory reasons for adverse employment actions).

9       Further,  there is no evidence that Apple denied Kannan any FMLA or CFRA benefits.

10  Kannan's flexible schedule requests were granted, and there is no evidence that he was ever

11  prohibited from attending any appointment or that Apple denied him of any benefit.  There is no

12  evidence presented that any adverse employment action was taken related to Kannan's schedule

13  requests.  He has failed to make a prima facie showing that there was a causal connection between

14  the adverse employment actions and any of his requests.

15       Therefore, the Court **GRANTS** summary judgment as to Kannan's claims of retaliation.

16       **E.**    **Claim 13: Wrongful Termination**

17       Finally, Kannan brings a claim of wrongful termination, arguing that Apple's acts resulted

18  in a constructive discharge.  "Under the constructive discharge doctrine, an employee's reasonable

19  decision to resign because of unendurable working conditions is assimilated to a formal discharge

20  for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that

21  a reasonable person in the employee's position would have felt compelled to resign?"

22  *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) (citation omitted).

23       Under the facts presented, Kannan was not, as a matter of law, constructively discharged.

24  The Ninth Circuit has held that

> constructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to

Case No.: 5:17-cv-07305-EJD
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

16

remain on the job to earn a livelihood and to serve his or her employer. *Brooks*, 229 F.3d at 930 (internal quotation marks omitted). Kannan claims to have established a constructive, wrongful discharge claim because "(1) Failure to promote an experienced employee while other inferior employees are promoted is intolerable; . . . (2) Being denied RSUs . . . and having actual salary decline while innovating and having advancing tenure is intolerable; . . . and (3) it is intolerable to make less after 6 years then when you started." Opp. at 22. Even if true, however, these conditions are insufficient to prove the intolerable or aggravated work conditions. Kannan has alleged nothing more than the "stresses and strains characteristic of life at the top of a major corporation." *Rochlis v. Walt Disney Co.*, 19 Cal. App. 4th 201, 213 (1993), *disapproved on other grounds by Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994). And thus, Kannan is unable to establish a constructive discharge claim. Therefore, the Court **GRANTS** summary judgement as to Kannan's wrongful termination claim.

## V.   CONCLUSION

For the foregoing reasons, Apple's Motion for Summary Judgment is **GRANTED**. The Court has filed this Order under seal because it contains material subject to sealing orders. Within **seven days** of the filing date of this Order, the Parties shall provide the Court a stipulated redacted version of this Order, redacting only those portions of the Order containing or referring to material for which the Court has granted a motion to seal and for which the Parties still request the material be sealed. The Court will then issue a redacted version of the Order.

**IT IS SO ORDERED.**

Dated: October 13, 2020

_____
EDWARD J. DAVILA
United States District Judge